## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| EMPIRE FIRE AND MARINE | : | |
| INSURANCE COMPANY, et al. | : | |
| | : | |
| v. | : | Civil No. CCB-05-605 |
| | : | |
| CONTINENTAL CASUALTY | : | |
| COMPANY, et al. | : | |
| | : | |

### MEMORANDUM

This case involves a dispute between the plaintiff, Empire Fire and Marine Insurance

Company ("Empire") and the defendant, Continental Casualty Company ("CNA"), over the

obligation of each insurance carrier, if any, to indemnify and defend John B. Coleman Trucking,

LLC ("Coleman Trucking") pursuant to commercial automobile insurance policies.  Now

pending before the court are cross motions for summary judgment.  For the reasons that follow, I

will grant CNA's motion and deny Empire's motion.

### BACKGROUND

On May 7, 2004, at 12:28 a.m. daylight saving time, Timothy Dale was involved in an

automobile accident while operating a tractor-trailer owned by Coleman Trucking in New

Jersey.  Three vehicles were involved in the accident: the vehicle operated by Dale, a vehicle

operated by Allan Clickman, and a vehicle operated by Mohammed B. Ismail.  Shahid Hanif was

a passenger in the vehicle being operated by Ismail.

On or about June 23, 2005, Hanif filed a personal injury lawsuit in the Superior Court of

New Jersey, Middlesex County, against Dale, John B. Coleman, and Ismail.  Hanif alleges that

he was injured when Ismail's vehicle was involved in an accident with the tractor-trailer

1

operated by Dale and owned by Coleman Trucking.  The complaint claims that as a direct and proximate cause of defendants' negligence, Hanif suffered injuries.

Coleman Trucking, located in Snow Hill, Maryland, purchased an insurance policy from CNA, policy number 251657776, which was effective from May 7, 2003 to May 7, 2004. Specifically, the policy provides as follows:

> This policy becomes effective and expires at 12:01 A.M. standard time at your mailing Address on the dates shown above.

Coleman Trucking purchased an insurance policy from Empire, policy number CL271124, for the period May 7, 2004 through May 7, 2005.  Specifically, the policy provides as follows:

> Policy Period: From 05/07/2004 to 05/07/2005 12:01 A.M. Standard Time at your mailing address shown above.

On or about March 2, 2005, Empire filed this action, which seeks a declaratory judgment from this court stating that there is no coverage under its insurance policy and that it has no duty to indemnify and defend Coleman Trucking or Dale as to any of the claims asserted against them by Ismail, Hanif, or Clickman.  Empire acknowledges that the underlying accident occurred on May 7, 2004 at 12:28 a.m., but contends that its policy was not yet in effect.  To be more precise, Empire claims that since daylight saving time was in effect in New Jersey on the date of the loss, the accident actually occurred on May 6, 2004 at 11:28 p.m. "standard time."  Accordingly, it is CNA's policy – which did not expire until May 7, 2004 at 12:01 a.m. "standard time" – that was in effect at the time of the loss.  While CNA does not dispute the time and location of the underlying accident, it does challenge Empire's assertion that CNA is responsible for the loss. According to CNA, daylight saving time and standard time are one and the same when daylight

saving time is in effect.  Hence, for purposes of the insurance policies, CNA asserts that Empire

is liable for the loss because the accident took place during the term of Empire's coverage.  In

sum, the only issue in this case is which of the policies at issue was in effect at the time the

accident occurred.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the

motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club,

Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witness'

credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002),

but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

3

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In Maryland, an insurance policy is a contract, and the words of an insurance policy are

to be given their ordinary meaning. *C&H Plumbing and Heating, Inc. v. Employers Mut. Cas.

Co.,* 287 A.2d 238, 239 (1972).  In an action that presents an issue of coverage under an

insurance policy, "it is the function of the court to interpret the policy and decide whether or not

there is coverage." *St. Paul Fire and Marine Ins. Co. v. Pryseski,* 438 A.2d 282, 286 (1981);

*Cole v. State Farm Mutual Ins. Co.,* 753 A.2d 533, 537 (2000).  When deciding the issue of

coverage under a policy, the primary principle of construction is to apply the terms of the

insurance contract itself. *Bausch & Lomb v. Utica Mutual,* 625 A.2d 1021, 1031 (1972).

Maryland does not construe an insurance policy most strongly against the insurer, but rather, the

parties' intentions should be ascertained from the policy as a whole. *Cheney v. Bell Nat'l Life,*

556 A.2d 1135, 1138 (1989).

Both the CNA and Empire insurance policies use "standard time at your mailing address"

to measure their coverage periods.  Based on the facts presented, it is the court's conclusion that

daylight saving time is the "standard time" when daylight saving time is in effect and,

accordingly, Empire's policy rather than CNA's was in effect at the time of the accident.

This result is dictated by the federal Uniform Time Act, 15 U.S.C.A. §§ 260-267, which

controls the definition of standard time.  Congress, in enacting the Uniform Time Act in 1966,

decreed that "it is the policy of the United States to promote the adoption and observance of

uniform time within the standard time zones." 15 U.S.C.A. § 260.  The primary intention of

Congress was to fix a uniform time for an advance to, and withdrawal from, daylight saving

time. *Whitmer v. House,* 426 P.2d 100, 105 (Kan. 1967). Specifically, the Act provides:

a) Duration of period; State exemption

During the period commencing at 2 o'clock antemeridian on the first Sunday of
April of each year and ending at 2 o'clock antemeridian on the last Sunday of
October of each year, *the standard time of each zone established by sections 261
to 264 of this title, as modified by section 265 of this title, shall be advanced one
hour and such time as so advanced shall for the purposes of such sections 261 to
264, as so modified, be the standard time of such zone during such period;*
however, (1) any State that lies entirely within one time zone may by law exempt
itself from the provisions of this subsection providing for the advancement of
time, but only if that law provides that the entire State (including all political
subdivisions thereof) shall observe the standard time otherwise applicable during
that period, and (2) any State with parts thereof in more than one time zone may
by law exempt either the entire State as provided in (1) or may exempt the entire
area of the State lying within any time zone.

15 U.S.C.A. § 260a (emphasis added).

CNA also cites 49 C.F.R. § 71.2, which provides that:

The Uniform Time Act of 1966 (15 U.S.C. § 260a(a)), as amended, requires that
the standard time of each State observing Daylight Saving Time shall be
advanced 1 hour beginning at 2:00 a.m. on the first Sunday in April of each year
and ending at 2:00 a.m. on the last Sunday in October. *This advanced time shall
be the standard time of such zone during such period.* The Act authorizes any
State to exempt itself from this requirement. States in two or more time zones
may exempt the easternmost time zone portion from this requirement. (emphasis
added)

The language and the statutory intent of the Uniform Time Act of 1966 establish that

from the first Sunday of April through the last Sunday of October, the standard time of each zone

is advanced one hour. This advanced time becomes the standard time. Thus, within a particular

zone, the advanced, "daylight saving time" becomes the standard time for that zone during the

designated period from April to October. It is undisputed that the accident occurred at 12:28

5

a.m. when daylight saving time was in effect.  Thus, the underlying accident occurred at 12:28

a.m. "standard time" at Coleman Trucking's mailing address in Maryland.  Under the terms of

CNA's policy, coverage had already terminated prior to the accident.

Empire contends, however, that Maryland has exercised its right to exempt itself from the

portion of § 260a which provides that the advanced time is "standard time" during daylight

saving time.  Specifically, Empire relies on Md. Ann. Code., Art. 1, § 35:

> § 35.   What constitutes standard time.
>
> The standard time throughout the State shall be that of the seventy-fifth meridian
> of longitude west from Greenwich, by which all courts, banking institutions and
> public offices and all legal or official proceedings shall be regulated.

Empire's argument is unpersuasive.  The Maryland statute does not, in fact, exempt Maryland

from daylight saving time.  Rather, it merely establishes the means by which time shall be

measured throughout the State of Maryland, placing Maryland in the second time zone,

designated as eastern standard time by the federal statute.  *See* 15 U.S.C. §§ 261, 263. According

to 15 U.S.C. § 261, "Except as provided in section 260a(a) of this title, ... the standard time of

the [second] zone shall be based on the mean solar time of the [seventy-fifth] degree of longitude

west from Greenwich."  The Maryland Code provision should be read *in pari materia* with the

federal statute so as not to contradict the Uniform Time Act.  Moreover, no legislation has been

enacted in Maryland that would exempt the state from the observance of daylight saving time.

Only two states – Arizona and Hawaii – do not observe daylight saving time, and in both cases,

the state legislature enacted legislation that specifically exempts the state, as permitted by 15

U.S.C. § 260a(a).  *See* Ariz. Rev. State. Ann. § 1-242 (2006) and Haw. Rev. Stat. § 1-31 (2004).

Accordingly, Maryland is required to observe daylight saving time as provided in the Act, and to

6

abide by the statutory definition of "standard time" when daylight saving time is in effect.

CNA relies on two cases – *Miracle Auto Center v. Superior Court*, 80 Cal Rptr.2d 587 (Cal. Ct. App. 1998) and *Leach v. Eureka Life Ins. Co. of America,* 580 S.W.2d 628 (Tex. Civ. App. 1979) – to buttress its argument that daylight saving time is standard time when daylight saving time is in operation.  It is notable that both of these cases were decided after the enactment of the Uniform Time Act.

In *Miracle Auto Center,* the California Court of Appeals concluded that the term "standard time," when used in an insurance policy to determine the expiration of coverage, meant the time that was currently in use in the state, whether it was standard Pacific time or daylight saving time.  In reaching this conclusion, the court examined the relevant California statutes that establish the means by which standard time is calculated and the application of daylight saving time.  California Government Code § 6807-3 provides that from "1 o'clock antemeridian on the last Sunday of April, until 2 o'clock antemeridian on the last Sunday of October, the standard time in this State so established shall be one hour in advance of the standard time now known as United States Standard Pacific time."  *Id.* at 589.  In essence, the California statute adopted daylight saving time, when in effect, as standard time in California, consistent with 15 U.S.C.A. § 260a(a).

Empire asserts that the relevant Maryland statute, by contrast, takes the opposite approach.  In other words, Maryland defines "standard time" only as the mean solar time of the seventy-fifth degree of longitude west of Greenwich.  Md. Ann. Code, Art. 1 § 35.  Thus, Empire contends that if the court were to rely on the holding of *Miracle Auto Center,* it would have to conclude that under Maryland law, standard time does not accommodate daylight saving

time.  I am not persuaded by this argument, however, for the same reason provided above.  To be more precise, I believe that Md. Ann. Code, Art. 1 § 35 merely establishes the means by which time shall be measured throughout the State of Maryland, and should be read *in pari materia* with 15 U.S.C.A. § 260a(a).  Accordingly, there is no conflict between the Maryland statute and the rationale of *Miracle Auto Center,* although California has clarified the issue by enacting its state statute.

A similar issue was raised in *Leach.*  In that case, the executrix of an estate sought benefits under a credit life insurance policy issued to the decedent that expired on September 13, 1977.  The decedent was killed in an accident around midnight on September 13, 1977.  The executrix contended that the decedent died before 1 a.m. central daylight time, which, but for the operation of daylight saving time, would have been prior to midnight on September 13, 1977, thus triggering coverage.  At trial, the court took judicial notice of 15 U.S.C.A. § 260a and the fact that daylight saving time was in effect at the time of the loss.  The court found for the defendant, holding that "the parties contracted in contemplation of the time change caused by Daylight Saving Time."  *Id.* at 631.

Empire contends that *Leach* is not persuasive, because the policy in *Leach* simply terminated on "9/13/77."  *Id.* at 629.  Thus, unlike the policy in this case, it did not specify a precise time of termination, nor did it specify the measure of time to be used to determine termination.  In other words, the court in *Leach* was not called upon to interpret the term "standard time," because that term was not used in the policy.  I am not persuaded by Empire's attempt to distinguish *Leach.*  Maryland, like Texas, has not exempted itself from the operation of daylight saving time.  Accordingly, I believe that CNA and Empire contracted with Coleman

Trucking in contemplation of existing law.  Since § 260a was in effect at the time the parties

entered into their contracts, they – like the parties in *Leach* – are bound by it.

Empire also asserts that the weight of authority leans toward Empire's interpretation of

"standard time."  For instance, Couch on Insurance addresses the timing issue presented in this

case.  *See* COUCH ON INSURANCE, *Standard Versus Other Time Measures*, § 102:15 (3d 2005).

To determine the measure of time to be used in an insurance contract, the court must first look at

the contract itself.  Couch recites that, "if the contract specifies standard time at a specific

location, the contract will be enforced accordingly, despite the fact that the specified location

happens to be operating on daylight savings time."  *Id.*   What Empire fails to mention, however,

is that Couch acknowledges the uncertainties that may arise in computing the time period

covered by an insurance policy and merely recites brief portions of the case law on this limited

issue.  Indeed, immediately after the excerpt cited by Empire, Couch continues, "On the other

hand, the time provisions specified in connection with coverage under a credit life insurance

policy have been found to be referenced to daylight saving time, the court concluding that the

parties had contracted in contemplation of a time change to come about in compliance with an

existing federal statute providing for daylight savings time."  *Id.,* (citing *Leach,* 580 S.W.2d

628).  Couch, in other words, does not offer a definitive determination of this issue.

Empire also relies on case law to support its argument.  In *Little v. First Federated Life

Ins. Co.,* 296 A.2d 372 (Md. 1972), the Maryland Court of Appeals analyzed the "premium due

date" provision of an individual mortgage disability insurance policy  to determine the date upon

which coverage was terminated.  The Court of Appeals remarked in a footnote:

> As an interesting aside, we note that the running of the clock into August 1 had
> apparently progressed further than the sixty seconds appellee indicates. Since, on

> August 1, in Maryland daylight saving time was officially in effect, the 12:01 a.m.
> Standard Time referred to in the certificate was in reality 1:01 a.m.

296 A.2d at 375, n.2.  Importantly, however, the fact that daylight saving time was in effect had no bearing on the issues presented in *Little*.  The court's ultimate conclusion regarding the termination of coverage  was based on the language in the certificate of insurance concerning the payment of premiums.  Thus, the *Little* footnote is merely dictum instead of binding precedent.

Empire also cites *Seligson v. Fireman's Fund Indemnity Co.,* 196 N.E. 611 (1935), to support its argument.  In *Seligson,* the Court of Appeals of New York considered whether an insurance policy's coverage period had commenced at the time of an automobile accident.  The accident occurred on June 29, 1933 at 12:25 a.m. daylight saving time.  The policy covered a "period 'beginning on the 29th of June, 1933, at 12:01 a.m., and ending on the 29th day of June, 1934, at 12:01 a.m., as to both dates, standard time at the place where the policy has been counter-signed.'" *Id.*  The court held that "standard time" did not mean "daylight saving time" and, therefore, "the policy was not in force at the time of the accident." *Id.*  The *Seligson* decision found that it was the intention of the parties to use standard time when designating the effective date of the policy and that 12:01 standard time on June 29 did not mean 12:01 daylight saving time.[1]  *Seligson,* however, was decided prior to the enactment of the Uniform Time Act in 1966.  As discussed above, the Act provides that once in effect, the advanced time shall be the standard time of the particular zone.  Thus, while there may have been uncertainty surrounding

---

[1] Empire also cites *Nevada Mining Assn. v. Erdoes,* 26 P.3d 753 (Nev. 2001), which held that Pacific Standard Time does not mean daylight saving time, even when daylight saving time is in effect.  This case, unlike *Seligson,* was decided after the enactment of the Uniform Time Act.  I decline to follow *Nevada Mining Assn.*  Instead, I agree with Justice Leavitt's dissent in that case, which relied on the language of 15 U.S.C.A. § 260a to find that daylight saving time becomes the standard time for a zone during the designated period from April to October.

10

this issue when *Seligson* was decided, any such uncertainty was resolved as of 1966.

Empire also asserts that CNA's interpretation of standard time, if adopted by this court, would mix "apples and oranges," because it would employ standard time to measure the coverage period and daylight saving time to measure the moment of the accident.  Empire's approach is subject to the same criticism.  In effect, Empire argues that for six months out of the year, there are two separate ways to measure time: standard time and daylight saving time.  This, of course, ignores the fact that the controlling federal statute unequivocally mandates that daylight saving time shall be the "standard time" from the last Sunday of April until the last Sunday of October.

For the foregoing reasons, I conclude that the accident underlying this case took place at 12:28 a.m. "standard time" in Maryland on May 7, 2004 and, accordingly, Empire's insurance policy was in effect at the time of the accident rather than CNA's.

A separate Order follows.


April 12, 2006                             /s/
Date                                      Catherine C. Blake
                                          United States District Judge